IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVEN ROTH,                              No   C-08-02156 VRW

      Plaintiff,                         ORDER

      v

LOOS & COMPANY, INC and SEISMIC
SOLUTIONS, INC,

      Defendants.
_____/

        This suit focuses on United States Patent No 7,188,809 ("'809 Patent") which describes an apparatus designed to stabilize rods employed to hold or support pipes, conduits or other components of a building.  Doc #58, Exh A, '809 Patent at 1:15-19. The apparatus can be used for bracing electrical conduits, cable trays and mechanical piping systems in the event of an earthquake. Id at 1:24-27.

        On June 16, 2009, plaintiff Steven Roth filed a complaint against defendants Loos & Company, Inc and Seismic Solutions, Inc for infringement of the '809 Patent.  Doc #1.  After filing a joint claim construction statement (Doc #56), the parties filed claim construction briefs, seeking to have the court construe a number of disputed claim terms from the '809 Patent (Doc ##57, 59).  This order addresses those disputed terms.

I

Claim construction is an issue of law, and it begins "with the words of the claim." Nystrom v TREX Co, Inc, 424 F3d 1136, 1142 (Fed Cir 2005), citing Vitronics Corp v Conceptronic, Inc, 90 F3d 1576, 1582 (Fed Cir 1996); see also Comark Communications, Inc v Harris Corp, 156 F3d 1182, 1186 (Fed Cir 1998) ("The appropriate starting point * * * is always with the language of the asserted claim itself."). Claim terms are "generally given their ordinary and customary meaning" unless the patent specification or file history contains a clearly stated "special definition." Vitronics Corp, 156 F3d at 1582. Moreover, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v AWH Corp, 415 F3d 1303, 1313 (Fed Cir 2005). Such a person is deemed to have consulted not just the claim term at issue, but the "entire patent, including the specification." Id. The Federal Circuit described the "person of ordinary skill" inquiry as follows:

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention—the inventor's lexicography-must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, viz, the patent specification and the prosecution history.

Multiform Desiccants, Inc v Medzam, Ltd, 133 F3d 1473, 1477 (Fed Cir 1998). See also Medrad, Inc v MRI Devices Corp, 401 F3d 1313, 1319 (Fed Cir 2005) ("We cannot look at the ordinary meaning of the

term * * * in a vacuum.  Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

Relatedly, courts should not rely on extrinsic evidence in claim construction to contradict the meaning of claims discernable from examination of the claims, the written description and the prosecution history.  Vitronics, 90 F3d at 1583.  Nevertheless, it is appropriate "for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite and widely held understandings in the pertinent technical field."  Pitney Bowes, Inc v Hewlett-Packard Co, 182 F3d 1298, 1309 (Fed Cir 1999).  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  Phillips, 415 F3d at 1317.  All extrinsic evidence should be evaluated in light of the intrinsic evidence. Id at 1319.

With these principles in mind, the court turns to the construction of the disputed claim language of the '809 Patent.

II

This order refers to the various surfaces of the invention using the same numbering as those in the figures in the '809 patent.  The following brief description of the invention is best read in conjunction with Figures 1, 2, 3, 4 and 5 of Attachments 1 and 2.

//

3

The '809 Patent describes an apparatus consisting of a hanging rod (10) that is reinforced by affixing a stiffener member (18) using one or more deformable clamps (20).  See Attachment 1, Fig 1, 2.  The clamps are defined by various segments (22, 24, 26).  See Attachment 2, Fig 5.  The clamps are secured to the rod and stiffener member by a bolt (36) and nut (38) which, when tightened, bring two clamp segments (22, 24) together, causing them (22, 24) and other segments (26) to deform to the shape of a portion of the outer surface of the hanger rod (10) and stiffener member (18), until the two clamp segments (22, 24) are secured together in locked relation.  See Attachment 1, Fig 3.  The clamp, when secured together in locked relation by the nut and bolt, resists relative movement between the hanging rod (10) and stiffener member (18) and between the clamp and the member it encircles.  See Id.

The '809 Patent includes three claims.  Doc #58, Exh A, '809 Patent at 6:6-8:18.  There are four disputed terms that require claim construction all of which are part of the first claim.  Doc #56 at 2.  The disputed terms are presented and underlined below:

> The invention claimed is:
>
> 1. In combination:
>
>    a vertically disposed hanger rod * * * and stiffener apparatus stabilizing said hanger rod, said stiffener apparatus comprising:
>
>    a clamp integrally constructed of deformable sheet metal having deformable first and second clamp segments and a deformable third clamp segment integral with and located between said first and second segments * * *
>
>    a threaded bolt extending between said first and second clamp segments * * *

//

>    a nut threadedly engaged with said threaded bolt, said
>        threaded nut and bolt fastening together said first and
>        second clamp segments * * *
>
>    an elongated stiffener member * * * having a side thereof in
>        engagement with a side of said threaded hanger rod and
>        having said outer peripheral surface thereof disposed in
>        a space defined by first, second, and third clamp
>        segments and said threaded bolt along with said threaded
>        hanger rod, * * *
>
>    and said nut upon tightening thereof causing interaction
>        between said clamp and said threaded hanger rod resulting
>        in deformation of said first and second clamp segments *
>        * * and form[ing] bends in said first and second clamp
>        segments causing first and second clamp segments to
>        partially surround the threaded hanger rod and conform to
>        the shape of and engage a portion of the outer surface of
>        said threaded hanger rod in opposition to said elongated
>        stiffener member to urge the threaded hanger rod and said
>        elongated stiffener member toward one another and into
>        direct tight engagement * * *
>
>    to <u>resist sliding of the clamp</u> on the threaded hanger
>        rod, said deformation of said first and second clamp
>        segments further resulting in said threaded hanger rod
>        being brought into direct tight engagement with both said
>        first clamp segment and said second segment to <u>resist
>        sliding of the clamp</u> * * *
>
>    and also resulting in deformation of said third clamp
>        segment to cause said third clamp segment to conform to
>        the shape of the elongated stiffener member with said
>        third clamp segment in direct tight engagement with said
>        elongated stiffener, at least one of said first, second
>        and third clamp segments being in <u>torqued condition</u>
>        resulting from deformation thereof with a clamp segment
>        <u>outer edge</u> thereof <u>biting into</u> at least one of said
>        elongated stiffener member and said threaded hanger rod
>        to <u>resist relative movement between the clamp and
>        elongated stiffener member and said threaded hanger rod</u>.

Doc #58, Exh A, '809 Patent at 6:6-8:12.


<u>"Torqued condition"</u>

The first claim of the '809 Patent states that "at least one of said first, second and third clamp segments being in torqued condition resulting from deformation thereof * * * ."  Doc #58, Exh

5

A, '809 Patent at 8:5-7. Plaintiff proposes that "torqued condition" be construed as "under the influence of forces that tend to cause rotation or twisting." Doc #57 at 13. Defendants' proposed construction is "twisted or rotated so that the inner surface of the clamp segment is no longer substantially parallel to the longitudinal axis of the hanger rod and stiffener member." Doc #59 at 4-5.

There are two differences between the parties' proposed constructions. The first is that while defendants propose to define "torqued condition" as "twisted or rotated," plaintiff's proposed definition defines the same term to mean "under the influence of forces that tend to cause rotation or twisting." As plaintiff conceded at the hearing, his definition is too broad. The claim language requires more than a condition of being "<u>under the influence of forces that tend to cause</u> rotation or twisting." The rotation or twisting must occur.

The '809 Patent specification supports this more narrow definition, stating: "It has been found that tightening of the nut 38 causes <u>torquing</u> of one or more of the clamp segments, causing an edge or edges thereof to bite into either or both of the threaded hanger rod and conduit to further secure the components." Doc #58, Exh A, '809 Patent at 5:5-9. According to the specification, the torquing itself causes a clamp segment to bite into another part of the apparatus. This suggests that "torqued condition" refers to the state of being twisted or rotated rather than the force that in turn causes twisting or rotating. The dictionary definition to which plaintiff cites further confirms a narrower construction. Under one of the definitions provided by plaintiff, "torqued" means

"to twist."  See Doc #57 at 14, citing <u>The Oxford English Dictionary On Compact Disc</u> (Oxford 2d ed).  Accordingly, the court adopts "twisted or rotated" rather than "under the influences of forces that tend to cause rotation or twisting."

The remaining difference between the two constructions is that defendants include a further restriction: "twisted or rotated <u>so that the inner surface of the clamp segment is no longer substantially parallel to the longitudinal axis of the hanger rod and stiffener member</u>."  This added restriction is not contemplated by the term it purports to construe.  "In the absence of an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning."  <u>Teleflex v Ficosa North America Corp</u>, 299 F3d 1313, 1325 (Fed Cir 2002).  The ordinary meaning of "torqued condition" does not encompass an altered orientation between two objects such that one is no longer parallel to the other.  Moreover, the claim language does not mention that the clamp segment was at any time "substantially parallel to the longitudinal axis of the hanger rod and stiffening member," so there is no support for importing a limitation into "torqued condition" that implies an end to that relationship.

Accordingly, the court adopts the construction "twisted or rotated" for the term "torqued condition."

<u>"Biting into"</u>

The first claim of the '809 Patent goes on to state: "with a clamp segment outer edge thereof <u>biting into</u> at least one of said elongated stiffener member and said threaded hanger rod to resist relative movement between the clamp and elongated stiffener

7

member and said threaded hanger rod." Doc #58, Exh A, '809 Patent at 8:7-12. Plaintiff proposes that "biting into" be construed as "an outer edge of a clamp segment (or portion thereof) penetrates the surface of the stiffener or hanger rod." Doc #59 at 11. Defendants' proposed construction is "the outer edge of the clamp segment penetrates and embeds in the surface of the stiffener or threaded hanger rod." Doc #57 at 15.

At the outset, the court notes that the proper construction of "biting into" need not specify which object is on the giving or receiving end of the bite, as both parties specify in their proposed constructions. The claim itself states that "a clamp segment outer edge" bites into one or both of the "elongated stiffener member" and the "threaded hanger rod." Accordingly, the court's construction will merely construe the term "biting into" and will not adopt plaintiff's proposed language for the thing doing the biting: "outer edge of a clamp segment (or portion thereof)."

Discarding the surplus language in plaintiff's and defendants' proposed constructions, both parties agree that "biting into" requires "penetrating the surface," but defendants add the further restriction of "embedding in the surface." Defendants contend that "[i]t cannot be disputed that the '809 Patent teaches that by 'biting into' the surface of the threaded hanger rod or stiffener, the outer of the edge of the clamp is able to provide further resistance to relative movement between the clamp and the hanger rod or stiffener." Doc #59 at 11. Defendants continue that in order for the apparatus to achieve this purpose, "biting into" must require both penetrating and embedding. Doc #59 at 11.

8

Penetrating alone, according to defendants, is insufficient to convey the meaning of an action that will provide resistance.

The court construes "biting into" as "penetrating the surface of." The ordinary meaning of "biting into" does not require "embedding in the surface." When one bites into an apple, one's teeth do not embed themselves into the peel; the teeth merely penetrate the peel. While defendants correctly posit that the "biting into" contemplated by this claim language must serve the purpose of providing further resistence to relative movement, that restriction is supplied not by the term "biting into," but by the claim language that follows that term. The claim language itself states that the "biting into" occurs "to resist relative movement between the clamp and said elongated stiffener member and said threaded hanger rod." Doc #58, Exh A, '809 Patent at 8:10-12. Thus, no further restriction need be imported into the term "biting into" to ensure that the purpose of the action is to resist relative movement.

**"Outer edge"**

In the first claim, the thing "biting into at least one of said elongated stiffener member and said threaded hanger rod" is the "clamp segment <u>outer edge</u>." Doc #58, Exh A, '809 Patent at 8:8-10. The analysis for "outer edge" is best read in conjunction with the visual images included by plaintiff and defendants in their joint claim construction statement (Doc #56 at 3), included here as attachment 2, figures 4 and 5.

Plaintiff's proposed definition is "the narrow surfaces of the clamp (or portions thereof) that run perpendicular to the

9

longitudinal axis of the hanger rod 10." Doc #57 at 7; see Attachment 1, Fig 4. Defendants, on the other hand, propose: "line where the wide outside surface of the clamp that runs parallel to the longitudinal axis of the hanger rod and stiffener meets the narrow surface of the clamp that runs perpendicular to the longitudinal axis of the hanger rod and stiffener." Doc #59 at 12-13; see Attachment 1, Fig 5.

Defendants' main argument in support of their construction is that if the word "outer" in the term "clamp segment outer edge" has any meaning, the clamp segment must also have an inner edge. Doc #59 at 12-13. Defendants' construction, as shown in attachment 2, figure 5, gives the word "outer" meaning by distinguishing between an outer edge and an inner edge. Defendants argue that the word "outer" is meaningless in plaintiff's proposed definition because there is no inner edge from which an outer edge must be distinguished. See Attachment 2, Fig 4.

The main argument against defendants' proposed construction is that it would render the patent inoperable. The claim calls for the "clamp segment outer edge" to bite into the hanging rod (10) or the stiffener member (18). See Attachment 1, Fig 3. The operation of the patent depicted in the accompanying figures and the claim language calls for tight engagement of the clamp segments and both the hanging rod and stiffener member, but at no time is defendants' version of the "outer edge" ever in contact with the hanging rod or stiffener member. See Attachment 1, Fig 2, 3; Attachment 2, Fig 5.

Defendants do not dispute that their proposed construction would render the patent inoperable, but they contend

10

that such a consideration is irrelevant.  Defendants cite to <u>Chef America, Inc v Lamb-Weston, Inc</u>, 358 F3d 1371 (Fed Cir 2004) for the proposition that "a nonsensical result does not require the court to redraft the claims of the patent.  Rather, where * * * claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated."  <u>Chef America</u>, 358 F3d at 1374.

The problem with defendants' argument is that the term "outer edge" is not subject to only one reasonable interpretation. Dictionary definitions confirm that an "edge" can ordinarily refer to either a line between two surfaces, as defendants' submitted definition suggests, or a thin surface or side of an object, consistent with plaintiff's proposed construction.  See <u>The Concise Oxford Dictionary</u> (Oxford 10th ed 2002): "edge * * * 4 the line along which two surfaces of a solid meet."  Doc #60, Exh 7 at 4; <u>Webster's Third New International Dictionary</u> (Merriam-Webster 1981) ("edge: * * * 5 * * * the relatively thin surface or side of any object bounded by plane surfaces.").

Thus, defendants' only remaining argument that plaintiff's proposed construction is unreasonable is that plaintiff does not account for an inner edge to justify the use of the word "outer."  But nowhere in the patent is there any mention of an inner edge.  Outer may reasonably refer to the outside boundary of the clamp segment, away from the center of the clamp segment. Defendants argue that such an explanation is faulty because the center of the clamp must be the inner surface, as if the clamp were a cross-section of a shopping bag where the inside is the center.

11

Defendants' argument fails, however, because the first claim refers not to the outer edge of the clamp, but to the outer edge of the clamp segment. Doc #58, Exh A, '809 Patent at 8:8-10. Each clamp segment is rectangular in shape, and so outer may reasonably be interpreted to explain that the referenced edge is the thin surface at the boundary and away from the center point of each rectangular clamp segment. Accordingly, both proposed constructions are consistent with the term "outer edge" itself.

In the context of the rest of the claim language and the figures depicting the specification, however, a person with ordinary skill in the field would only interpret "outer edge" to refer to the part of the claim segment that can possibly bite into the hanging rod and stiffener member as the claim requires. Because defendants' version of "outer edge" would never come into contact with either the hanging rod or the stiffener member, defendants' proposed construction is inconsistent with the context of the term. Accordingly, the court construes "outer edge," consistent with plaintiff's proposed construction, as "the narrow surfaces of the clamp segments that run perpendicular to the longitudinal axis of the hanger rod and define the outer boundaries of the clamp."

**"To resist sliding of the clamp" and "to resist relative movement between the clamp and said elongated stiffener member"**

The term "resist" appears three times in the first claim of the '809 Patent. Doc #58, Exh A, '809 Patent at 7:8-9, 7:13-14, 8:10. Defendants do not submit any proposed construction for "resist," but argue that the term as used in the '809 Patent is

12

1 "insolubly ambiguous" and that the claim is therefore invalid under
2 35 USC § 112, ¶2.  Doc #59 at 14.  Plaintiff responds that the
3 question whether a mechanical apparatus "resists sliding" or
4 resists movement" is objectively determinable, and that the term
5 "resist" has an ordinary meaning of "oppose, stop or hinder (in any
6 amount)," which is not ambiguous.  Doc #57 at 15-16.

7     A claim satisfies the definiteness requirement of 35 USC
8 § 112 "[i]f one skilled in the art would understand the bounds of
9 the claim when read in light of the specification."  Exxon Research
10 & Eng'g Co v United States, 265 F3d 1371, 1375 (Fed Cir 2001).  "A
11 claim will be found indefinite only if it 'is insolubly ambiguous,
12 and no narrowing construction can properly be adopted * * * .'"
13 Praxair, Inc v ATMI, Inc, 543 F3d 1306, 1319 (Fed Cir 2008), citing
14 Exxon Research & Eng'g Co, 265 F3d at 1371.  A claim avoids
15 invalidity on indefinite grounds "[i]f the meaning of the claim is
16 discernible, even though the task may be formidable and the
17 conclusion may be one over which reasonable persons will disagree."
18 Exxon Research & Eng'g Co, 265 F3d at 1371.

19     Defendants rely on Halliburton Energy Services, Inc v M-I
20 LLC, 514 F3d 1244 (Fed Cir 2008) in arguing that the term "resist"
21 is ambiguous.  In Halliburton, the Federal Circuit held that a
22 claim term "fragile gel" in a patent relating to oil field drilling
23 fluids was "insolubly ambiguous" because the term "fail[ed] to
24 distinguish the fragileness of the drilling fluids of the invention
25 from the close prior art."  514 F3d at 1253.

26     Halliburton is not on point here because the degree of
27 fragility not properly articulated in the Halliburton patent was
28 necessary to distinguish that patent from the prior art.  As the

13

1  **Halliburton** court noted, "[d]uring prosecution, [the patentee]
2  distinguished the claims of the [] patent from prior art fluids by
3  stating that the claims were 'limited to' a 'fragile gel' drilling
4  fluid or the method of using a 'fragile gel' drilling fluid."  524
5  F3d at 1246.  The patentee of the '809 Patent, at issue here, did
6  not attempt to distinguish the patent from prior art based on the
7  amount of resistance against relative movement provided by the
8  patented mechanism.  Rather, the patent is distinguishable based on
9  the mechanism itself.
10         The term "resist" has an ordinary meaning, "to oppose,
11 stop or hinder," and a person with ordinary skill in the art would
12 interpret the claim to mean that the apparatus provides more than a
13 de minimis amount of resistence to sliding of the clamp and to
14 relative movement between the clamp and the elongated stiffener
15 member.  No construction is required and the claim is not invalid
16 due to indefiniteness.

                    IT IS SO ORDERED.

                    _____
                    VAUGHN R WALKER
                    United States District Chief Judge

**Attachment 1**

United States Patent No US 7,188,809*

**Figure 1**            **Figure 2**




**Figure 3**



*Images obtained from Doc #58 at 4-5, '809 Patent

**Attachment 2**

**Figure 4**
**Plaintiff's Construction of "outer edge"**



**Figure 5**
**Defendants' Construction of "outer edge"**

